IN WASHINGTON SUPERIOR COURT, SPRING TERM, 1831.

MIDDLETON POOL, Appellant, vs. WM. BARNETT, Respond-
ent.

## Right of Appeal in Equity Causes.

THE question presented for adjudication in this case is the following: Does the right of appeal from a special jury, to a hearing before another special jury, exist in Equity causes in Georgia?

In this State the right of appeal from a special jury, to a hearing before another special jury, *exists* in Equity causes.

*By a majority of the Judges.* The correct solution of this question depends upon the 5th section of the 4th article of the Constitution of 1798, Prin. Dig. 558, and the 16th sec. of the Judiciary act of 1792, Watk. Dig. 480. and section 8th of the Judiciary act of 1797, Watk. Dig. 632. It is readily admitted with Judge Law, who dissents from this opinion, that the right of appeal from the verdict of a special Jury in equity causes is not authorized by the Judiciary act of 1799. But if that act is taken as the sole rule of conduct in equity causes, how has it happened that bills in Equity are submitted to the decision of a special jury? There is no provision which authorizes that practice in that act; yet special juries throughout the State decide all cases in Equity. This practice must have some legal foundation, or must have been introduced by judicial caprice. If the practice is to be traced to the latter origin, how has it happened, that it *has been and continues to be* uniform throughout the state? The universality of the trial of cases in Equity by special juries is at least a presumption in favor of its legality. The right of appeal upon bills in Equity is admitted in six out of the eight circuits, existing in this State. In two circuits only is the right refused. Both practices cannot be right, and it is important that the question be settled, that the administration of the law may be uniform thoughout the State. That the practice of granting such appeals has not been the result of judicial caprice, may be safely concluded by all who were acquainted

with the character of the eminent jurists who then flourished in the middle and western circuits, where that practice is known to have been contemporaneous with the judiciary act of 1799. That act was manifestly drawn with great care, and in form is certainly an improvement upon all the preceding judiciary acts. It is understood to have been drawn by the late Judge Stith, and was doubtless intended to contain every thing necessary to the complete regulation of the judiciary department. Like all other human performances it has been found defective ; for it has made no provision for the decision of bills in equity. If that act is now to be considered as the sole rule of conduct for the courts of this State, there is an end to the Equity jurisdiction of the Superior Courts, unless in defiance of that act, a practice supposed by some to be the result of judicial caprice is to be continued. But the Equity jurisdiction of the Superior Courts is believed to be derived from a higher source than the Judiciary act of 1799. The trial of bills in Equity by special juries is derived immediately from the 5th section of the 4th article of the constitution of 1798, which declares that " Trial by jury, as *heretofore used* in this State shall remain inviolate." The question then to be solved is, What was the trial by jury theretofore used in this State ? By referring to the judiciary act then in force, it will be ascertained what was the trial by jury declared by the constitution to be inviolate. If the Judiciary act of 1797, which was then in force made no change in the mode of trial by jury in the preceding judiciary acts, or in the last act upon that subject, no ambiguity can rest upon the point in discussion. The 16th sec. of the judiciary act of 1792, vests the Superior Court with Equity powers in certain cases, until the case is set down for trial, which shall then be submitted with the evidence to a special jury, who shall give their verdict on the same, but if either party shall be dissatisfied with such verdict, an appeal may be entered in the clerk's office within ten days after trial, when a hearing of such cause shall again be had before another special jury, and such trial shall be final and conclusive. The act of 1792 was repealed by the act of 1797, which, however, contained the same provision in the same words as the act of 1792. It is by virtue of the two last recited acts, that bills in Equity are submitted to the verdict of a special jury, and if submitted to a special jury the right of appeal from such verdict is as plainly given as the English language could give it. This was the trial by jury as *heretofore used*, which has been adopted by the 5th sec. of the 4th article of the Constitution of 1798, and is of equal authority with the Constitution itself.

If this opinion be correct, and it is confidently believed to be so ; it is unnecessary to examine the reasons and inferences of Judge Law upon the act of 1799. For admitting for the sake of argument that it was the intention of the judiciary

WASHINGTON,
Spring Term,
1831.

POOL
*v.*
BARNETT.

Prin. Dig. 558.

Watk. Dig. 480.

act of 1799, to take away the right of appeal upon bills in equity, it could not do it, because that right was secured by the Constitution of 1798. But it is necessary to remark that the act itself discovers no such intention; for that act does not direct bills in Equity to be tried by special juries, and therefore cannot be supposed to have intended to take away the right of appeal, where it had not directed a trial. It has been urged (not indeed by Judge Law) that the acts of 1792 and 1797, being repealed, could not have any application to the question. If there was any force in this it could apply only to the act of 1792, for the act of 1797 was not only unrepealed at the adoption of the Constitution, but was the only act in force upon that subject at the time of its adoption. But the objection is entitled to no weight in relation to the act of 1792. The Constitution says, " Trial by jury as *heretofore used* shall remain inviolate." Does not the act of 1792, show what was the mode of trial by jury *used*, before the adoption of the Constitution as clearly after its repeal as before it ? If the Constitution had said trial by jury as *now used*, then resort would only have been had to the judiciary act of 1797; but when the word "heretofore" was used, it became proper to look behind the act of 1797, to see what was the mode of trial by jury in force before the act of that date.

Judge Law appears to be somewhat embarrassed with the idea which he has attached to the word *appeal*. It is generally true (as he says) that the idea of an appeal, is the rehearing of a cause before another and higher tribunal. This is the idea attached to appeals in the legislation of England, and it was the idea attached to it in the legislation of this State anterior to the act of 1792. But it will be readily admitted that the legislature was competent to call its own acts by such terms as to it seemed proper, and that it had a right to apply the term appeal, as it has been applied in the acts of 1792 and 1797, and that the constitution had a right to adopt this new application as it has done. The term appeal as applied in these acts, signifies only a right of rehearing, before the same Court, with a different special jury. The Judge is also at some difficulty in finding a satisfactory reason for such rehearing. If the law itself is clear, it is enough. But if it is necessary to give a reason for the law, it is believed a satisfactory one can be assigned. In the case of ordinary appeals from verdicts at common law, the principal advantage in the estimation of the most skillful practitioners, is the ascertainment of the evidence of the adverse party and the discovery of the defects of the evidence produced by himself. The discovery made by the first trial enables both parties to come to the final trial with all the evidence applicable to the case properly arranged so as to establish the true merits of the controversy. If this is not the fact why are there so few ap-

peals by consent? If the whole or even the principal reliance was in the special jury, trials before a petit jury would become obsolete. Every day's experience proves that trials before petit juries are constantly resorted to, and it must be for the reason just given. If a first trial be desirable in common law cases which are generally simple and by no means complicated, how much more desirable is such a trial in bills in equity which are almost always complicated, consisting of questions of account and the settlement of intestate estates, involving the management of those estates for a series of years, embracing returns of the hire of negroes and the rent of plantations annually. Whoever witnessed an investigation of a bill in equity for settling a large estate in the hands of an executor or administrator after a lapse of fifteen and twenty years, will easily comprehend the advantages of a first trial, of a first exhibition of evidence and documents, preparatory to a final adjustment of a large intestate estate.

*Judge Law, dissentient, delivered the following opinion.*

I hold that the right of appeal from the verdict of a special jury to a hearing before another special jury, does not exist in Equity causes in Georgia; and for the following reasons.

1. Because the right is not expressly given by the existing laws of the State.

2. By a just construction of our judiciary act of 1799, such right cannot be derived by implication from any of its provisions.

3. The trial upon such appeal, being by a tribunal co-equal and the same in character, power and intelligence with that by which the first verdict was rendered, this right of appeal would be but a right to a new trial in all cases at the will of the party; and which by the constitution of 1798, and the judiciary act of 1799, the court has the power to grant, upon proper and legal grounds.

1. The first act authorizing an appeal from the verdict of a special jury in an equity cause, is the act passed in 1792, regulating the judiciary. This act was repealed by the act of 1797, which declares in sec. 86, "That all former acts for regulating the judiciary department of this State, be and they are hereby repealed." The act of 1797, however, literally re-enacts the provisions of the act of 1792, on this subject, viz. sec. 8th of act 1797. "The Superior Court shall in all cases respecting the discovering the transactions between co-partners, &c. be competent to sustain a suit by bill and proceedings therein, until the setting down of the cause for trial; such Superior Court shall then submit the merits of the suit with the evidence thereon, &c. to a special jury who shall give their verdict on the same; but if either party shall be dissatisfied with such verdict an appeal may be entered in the clerk's office within ten days after trial, when a hearing of such cause shall again be had before another special jury

WASHINGTON,
Spring Term,
1831.

Pool
v.
Barnett.

and such trial shall be final and conclusive." By the judiciary act now in force, passed in 1799, sec. 61. it is declared "That the act entitled 'an act to revise and amend the judiciary system of this State' passed at Louisville on the 9th. Feb. 1797, from the 1st to the 67th clause inclusive, be and the same is hereby repealed." We are thus brought down to the act of 1799, to which we must look for this right, if it exist, seeing that the previous acts by which it was conferred are repealed. It is believed that no such right is *expressly* given by the act of 1799, and if it be derived from that act, it must be by the construction which shall be given to the 26th or 53d sections ; and this leads us,

2. To inquire whether this 26th section can be extended to embrace Equity causes. I hold the opinion that this section is alone applicable to proceedings at common law. This I think is abundantly manifest from the whole tenor of the act, which has exclusive reference to proceedings at common law until we arrive at the 53d section, where the special and equitable powers of the Superior Courts are pointed out and defined. But statutes " *in pari materia*," although they may have been repealed, furnish a just guide in the interpretation of a statute. To show that the legislature did not consider this section as embracing cases in equity it is only necessary to refer to the act of 1797, sec. 37, where we find a provision answering to the 26th sec. of the statute of 1799, and yet we have the special enactment as contained in the 8th section on the subject of appeals in Equity cases.

I cannot perceive either how it is possible to derive this right from the 53d section of the act of 1799. That section declares "That the Superior Courts shall exercise the powers of a Court of Equity in all cases where a common law remedy is not adequate, &c. and the proceedings in all such cases shall be by bill and such other proceedings as are usual in such cases until the setting down of the cause for trial. If it be conceded as some have supposed, that at this stage, the proceedings usual in Chancery ceased, and the trial was to be had by a jury as in common law cases, still there can be no pretence for the exercise of this right of appeal ; an appeal from one to another coordinate and coequal tribunal being an exception, and not sanctioned by the usual course of proceedings at common law. The term appeal denotes the removal of a cause from an Inferior Court or Judge to a Superior Court or higher tribunal—from a petit jury to a more enlightened special jury—but the idea of an appeal from one to the same tribunal is unknown to our laws except as herein before referred to and which have been shown to be expressly repealed. But it will, I think, more fully appear by the following suggestions under the third ground assumed, that this right cannot be implied from that section.

3. The constitution of 1789, art. 3. sec. 2. directs that " the

general assembly shall point out the mode of correcting errors and appeals, which shall extend as far as to empower the Judges to direct a new trial by a jury within the county where the action originated, which shall be final." For the purpose of carrying this provision of the constitution of '89, into effect, the legislature anterior to the adoption of the constitution of 1798, had done no more than to authorize an appeal from a verdict rendered in the Superior Court, which appeal it is declared "shall be admitted and a new trial granted and tried the next term by a special jury." By the construction given to the constitution it seems to have been considered that the judges had no power to grant a new trial after the trial of the appeal, but in fact that the new trial intended was the trial upon the appeal, which was final. That such was the fact will be more apparent by referring to the provisoes contained in the repealing section of the act of 1799—by which the act of 1797 is continued in force so far as relates to proceedings which originated under ti ; and the right of appeal according to the provisions of said act, saved, from all verdicts rendered in any of *those* cases which originated under the act of 1797, but which had been tried after the signing the constitution of 1798 ; and a further saving in relation to cases returned in any of the said courts prior to the constitution of 1798, which it is declared shall be tried and appeals allowed and tried according to the act of 1797. Then follows this further proviso—"That nothing herein contained shall prevent any person from applying for a *new trial* if he shall think proper, which the judges, or one of them, shall grant if the same can be done *on proper and legal grounds as in cases arising under this act.* If the judges had the power of granting a new trial in their discretion anterior to the constitution of 1798, and act of 1799, whence the necessity of this proviso, and why the peculiar phraseology ' *on proper and legal grounds' as in cases arising under this act.*" It seems to me very clear that the legislature considered the power to grant new trials after the trial upon the appeal as derived from the constitution of 1798 ; which declares in the 1st sec. 3d art. that the judges shall have power *to order* new trials on proper and legal grounds, and which is followed by the act of '99 which declares in the 55th section, that the Superior Courts shall have power to grant new trials in any cause depending in any of the said Superior Courts, in such manner and under such rules and regulations as they may establish, and according to law and the usages and customs of courts. And in the 57th section it is enacted "that in any case which has arisen *since the signing the present constitution, or which may hereafter arise,* of a verdict of a special jury being given contrary to evidence and the principles of justice and equity, it shall and may be lawful for the judge presiding, to grant a **new**

trial before another special jury, in the manner prescribed by this act. If the legislature conceived that the judges had the right to grant new trials after the verdict of a special jury, prior to the constitution of '98, it is not easy to comprehend the reason for the limitation in the aforesaid section to cases arising subsequently to the signing that constitution. Thus then the constitution of '89, makes the trial upon the appeal *final*. The legislature have so understood it, and have no where authorized a new trial after the verdict of a special jury upon the appeal. The constitution of '98 does give the judges the power of granting new trials after the verdict of a special jury, and the legislature have limited the exercise of that right to cases arising since the adoption of that constitution. It was, I apprehend, under this view of the subject that the apparent necessity of allowing an appeal in an equity cause, presented itself to the legislature prior to the constitution of '98. The propriety of an appeal from the verdict of a petit jury to a special jury, composed of the most respectable and enlightened individuals in the county, carrying with them to the trial, superior intelligence and greater capacity for doing justice, and less liability to prejudice and influence, is enforced by considerations which all feel and understand; but the allowance of an appeal from one special jury to another, equal in all respects in legal contemplation, is simply to grant a new trial in all cases at the will of the party. But the right to a new trial is put by the constitution of '98 on its proper ground, and is predicated on some error committed, or something unavoidably omitted, by which substantial justice has not been done. Hence it is, that whilst the 8th section of the act of '97 is expressly repealed by the act of '99 we find no express reenactment upon this subject in that act, nor any thing which in my judgment can at all authorize the conclusion, that it was intended to be embraced in any of its provisions. On the contrary, for the reasons which have been assigned, I think it clear that the legislature did intend wholly to repeal this provision of the act of '97, and to leave parties, if injustice had been done, to their plain and obvious remedy by application for rehearing. In the eastern circuit there is no appeal in an equity cause. When this practice commenced I do not know. The reasons for it do not appear—there is nothing upon our minutes on the subject—but it is certain that the Judge before whom the question came must have arrived at the conclusion here stated as the practice shows.